**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHILLIP STONEHART and MOUSSA KOUYATE, on behalf of themselves and all others similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 24-cv-4436** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NOW HEALTH GROUP, INC. d/b/a/ NOW FOODS,** | ) ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Phillip Stonehart and Moussa Kouyate bring this amended complaint

("Complaint") against Now Health Group, Inc. ("NOW"), alleging that the mislabeling on

defendant's magnesium citrate supplement constituted (1) fraudulent concealment, (2) unjust

enrichment, (3) breach of implied and express warranty under New York and Utah law, and (4)

violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815

ILCS 505/1, *et seq.*, and New York General Business Law (GBL). (Dckt. #17).

Before the Court is NOW's motion to dismiss plaintiffs' Complaint pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dckt. #19). Defendant argues that plaintiffs

fail to state a claim; that plaintiffs' claim for injunctive relief is moot; and that Stonehart's Utah

class claims are barred under Utah law. (*Id.*). Plaintiffs have consented to the dismissal of their

ICFA and New York breach of implied warranty claims. (Dckt. #28 at 6 n.1). For the reasons

that follow, defendant's motion to dismiss as to the remaining claims is denied.

### I.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).  When considering a Rule 12(b)(1) motion, the Court may consider matters outside of the pleadings to determine whether subject matter jurisdiction exists.  *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025).  The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nonetheless, the "notice-pleading standard is deliberately undemanding." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (cleaned up).  To this point, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it, *Berk v. Choy*, 607 U.S. ___, 2026 WL 135974, at *5 (2026), and the Rules likewise "do not require a plaintiff to plead legal theories." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).  Moreover, in opposing a Rule 12(b)(6) motion, a plaintiff is free to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (cleaned up).

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiffs and accept[s] all well-pleaded factual

allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). Nonetheless, "district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim." *Esco*, 107 F.4th at 678–79 (cleaned up). Dismissal is only warranted if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

## II.    FACTS

Magnesium is a mineral necessary for energy production, bone development, blood pressure regulation, and muscle and nerve function, among other processes. (Dckt. #17 ¶13 n.1 (citing *Magnesium*, National Institutes of Health, https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/)). While magnesium is naturally present in many foods, it is also sold as a dietary supplement. (*Id.*). Certain forms of supplemental magnesium are more bioavailable than others, meaning that the magnesium they contain is more easily and completely absorbed. (*Id.*). Magnesium citrate, lactate, and chloride, for example, are typically more bioavailable than magnesium oxide or sulfate. (*Id.*).

NOW is a company headquartered in Bloomingdale, Illinois that markets, advertises, and sells vitamin supplements throughout the United States, including a supplement for magnesium citrate (the "Supplement" or "Supplements"). (*Id.* ¶6). NOW's Supplement label states that it contains 400 milligrams of elemental magnesium per serving, derived "from [a] 2,018 mg complex of Magnesium Citrate, Magnesium Glycinate and Magnesium Malate." (*Id.* at 7). Plaintiffs allege that consumers "specifically prize" magnesium in these forms over other sources of magnesium, (*id.* ¶36); indeed, NOW advertises "Superior Bioavailability" and "With Glycinate and Malate" on the front of its Supplement, (*id.* at 6).

3

Plaintiffs Stonehart and Kouyate are Utah and New York residents, respectively, who have brought suit against NOW because they allege it is "impossible" for a three-capsule serving of NOW's Supplement to contain 2,018 milligrams of elemental magnesium from magnesium citrate, glycinate, and malate alone. (*Id.* ¶2). Instead, based on each component's magnesium content, they allege that the Supplement must contain either (1) less than 400 milligrams of magnesium per serving or (2) a cheaper "buffer" form like magnesium oxide, which has a higher percentage of elemental magnesium but is less bioavailable. (*Id.* ¶¶22–23).

Plaintiffs allege that NOW knew the Supplement did not contain 2,018 milligrams of elemental magnesium per serving derived from magnesium citrate, glycinate, and malate alone. (*Id.* at 12–13). They assert that NOW rigorously tests both its raw materials and its finished products with in-house laboratories, instruments, and staff. (*Id.* ¶¶28–29). Moreover, after plaintiffs brought suit, NOW changed the label of the Supplement to state that the magnesium it contains is derived "from [a] 2,018 mg complex of Magnesium Citrate, Magnesium Glycinate, Magnesium Malate, [and] Magnesium Oxide." (*Id.* at 11).

If plaintiffs had known the true composition of the Supplement, they allege, "they would not have purchased [it], or would have only paid for the magnesium from magnesium citrate, magnesium glycinate and magnesium malate actually delivered." (*Id.* ¶40). In the future, however, plaintiffs "would consider purchasing" the Supplement if its labels "accurately and truthfully described the amount and source of magnesium contained therein." (*Id.*).

## III. ANALYSIS

At issue is NOW's motion to dismiss plaintiffs' (1) fraudulent concealment, (2) unjust enrichment, (3) New York GBL, (4) New York and Utah breach of express warranty, and (6) Utah breach of implied warranty claims. (Dckt. #19). NOW also argues that plaintiffs' claim for

injunctive relief is moot and that Stonehart's Utah class claims are barred under Utah state law. (*Id.*). The Court addresses these claims in turn below.[1]

### A. Fraudulent Concealment

Plaintiffs' pleadings of fraudulent concealment must meet the heightened pleading standards of Rule 9(b), which apply to complaints alleging fraud. Fed.R.Civ.P. 9(b); *see Wertymer*, 142 F.4th at 495 n.1 ("In a diversity case, state law governs substantive issues, but federal laws govern procedural issues. Federal Rule of Civil Procedure 9(b), therefore, governs the pleading standard here.").

Under New York law, a claim for fraudulent concealment requires: "(1) a misrepresentation or a material omission of fact that was false and that the defendant knew to be false, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) the plaintiff justifiably relied upon the misrepresentation or material omission, [] (4) injury . . . [and (5)] that the defendant had a duty to disclose the material misinformation." *Hillary Developer, LLC v. Security Title Guarantee Corp. of Baltimore, et al.*, 219 A.D.3d 815, 816 (N.Y.App.Div. 2023). Similarly, under Utah law, a claim for fraudulent concealment requires: "(1) the existence of a legal duty to communicate, (2) that a defendant failed to disclose information known to them, and (3) that the nondisclosed information was material." *In re the Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 785 F.Supp.3d 1009, 1038 (D.Utah 2025); *see also Anderson v. Kriser*, 266 P.3d 819, 823 n.11 (Utah 2011).

---

[1] The Court follows the parties' lead in analyzing the sufficiency of plaintiffs' claims using both New York and Utah legal standards. As discussed in the Court's August 26, 2025 order on defendant's motion to strike, "which states' laws are at issue cannot be determined on this record . . . [and] the prudent approach is to wait for a more fully developed record before deciding that issue." (Dckt. #38 at 2–3).

Defendant argues that plaintiffs fail to state a fraudulent concealment claim because they fail to allege (1) a duty to disclose, (2) materiality, or (3) an intent to deceive. The Court disagrees.

### 1. Plaintiffs Adequately Allege a Duty to Disclose.

"A duty to disclose information can arise under New York law where (1) there is a fiduciary relationship between the parties; (2) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; or (3) one party to a transaction possesses superior knowledge of the facts not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F.Supp.3d 401, 411 (S.D.N.Y. 2016) (cleaned up). A duty to disclose can arise under Utah law where there exists "a relationship of trust between the parties, an inequality of knowledge or power between the parties, or other attendant circumstances indicating reliance." *Bistline v. Parker*, 918 F.3d 849, 884 (10th Cir. 2019); *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 333 (Utah 1997).

Plaintiffs argue that NOW had a duty to disclose due to superior knowledge, as well as a duty to disclose because NOW made a partial or ambiguous statement. (Dckt. #28 at 4–8). NOW contests the existence of both duties. In particular, NOW argues that no duty to disclose exists due to superior knowledge because (1) such a duty exists only "in the context of business negotiations where parties are entering a contract," and (2) NOW did not have superior knowledge because plaintiffs could have discovered the alleged fraud before or at the time of purchase. (Dckt. #20 at 9–10). On both points, defendant applies the incorrect standard.

A lack of privity of contract between plaintiffs and a defendant is not dispositive of a duty to disclose under either New York or Utah law. *See Strasser v. Prudential Secs., Inc.*, 218

6

A.D.2d 526, 527 (N.Y.App.Div. 1995) ("[A] duty to disclose . . . is not limited to parties in privity of contract."); *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286 (Utah 2006) ("A relationship that is highly attenuated is less likely to be accompanied by a duty than one, for example, in which parties are in privity of contract.").

Furthermore, contrary to defendant's arguments, information need not be "solely" or "exclusively" in a party's possession for that party to have superior knowledge. (*See* Dckt. ##20 at 9–10; 31 at 10). To determine the existence of a duty to disclose due to superior knowledge, New York courts ask only whether information is "peculiarly within the knowledge" of defendant and cannot be discovered through the "exercise of ordinary intelligence." *Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 278 (N.Y.App.Div. 2005); *see also Gander Mountain Co. v. Islip U-Slip LLC*, 923 F.Supp.2d 351, 366 (N.D.N.Y. 2013); *Sw. Payroll Serv., Inc. v. Pioneer Bancorp, Inc.*, No. 1:19-CV-1349 (FJS/CFH), 2020 WL 1889013, at *4 (N.D.N.Y. Apr. 16, 2020). "[A] buyer is not required to conduct investigations to unearth facts and defects that are present, but not manifest." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 151 (2d Cir. 1993) (listing cases).

To identify a duty to disclose in Utah, courts evaluate "the relationship between the parties, and the duties created by that relationship." *Moore v. Smith*, 158 P.3d 562, 572 (Utah Ct.App. 2007) (discussing duty to disclose in the context of a fraudulent nondisclosure claim). "Courts consider many factors, none of which is dispositive, in determining when a duty runs between parties," *Smith v. Frandsen*, 94 P.3d 919, 924 (Utah 2004), including the relation between the parties; the nature of the fact not disclosed, including whether it is discoverable by reasonable care; and the general class to which the person concealing the information belongs, *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330–31 (Utah 1990).

7

Here, plaintiffs adequately allege that defendant had "superior knowledge about . . . the composition of the Supplements" and "concealed and suppressed" information about their composition. (Dckt. #17 ¶¶30, 51). It is plausible that the contents of the Supplement were peculiarly within the manufacturer's knowledge, especially where, as alleged here, NOW conducted extensive testing at several stages of product development. (*See id.* ¶¶28–31). And where defendant expressly advertised its Supplement's superior bioavailability, it is plausible that neither reasonable care nor the exercise of ordinary intelligence would require plaintiffs to perform chemical calculations to detect the presence of a less bioavailable buffer, even where such information was publicly available. *See O'Connor v. Ford Motor Co.*, 567 F.Supp.3d 915, 965 (N.D.Ill. 2021) ("It is not apparent that the average consumer would know about [publicly available product complaints], know how to access them, or know how to interpret them or their importance to the decision to purchase a Vehicle."); *see also Greene v. Gerber Prods. Co.*, 262 F.Supp.3d 38, 72 (E.D.N.Y. 2017); *cf. Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228 (LEK/ML), 2022 WL 991518, at *25 (N.D.N.Y. Mar. 31, 2022) (finding that "by ordinary diligence and attention, Plaintiff[] should have known that anything containing fish might also contain high concentrations of heavy metals").

Plaintiffs also adequately allege that NOW had a duty to disclose to prevent a partial or ambiguous statement of fact from being misleading, a duty recognized by both New York and Utah law. *See Almeciga*, 185 F.Supp.3d at 411; *First Sec. Bank*, 786 P.2d at 1330–31. "Partial or ambiguous statements" create a duty to speak under the theory that "once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth." *Brass*, 987 F.2d at 150; *see also Leprino Foods Co. v. DCI, Inc.*, 727 Fed.Appx. 464, 475 (10th Cir. 2018) (duty to disclose exists "when [a statement] purports to tell the whole truth and does not").

8

Defendant's only argument that a duty to disclose does not arise here is that "it is publicly-available information that various forms of magnesium exist and may be identified as merely magnesium glycinate, malate, or citrate." (Dckt. #31 at 10). In so arguing, however, they concede that their label contains only part of the truth: consumers are required to conduct their own research to calculate the presence of magnesium oxide. Plaintiffs plausibly allege that reasonable consumers base their purchasing decisions only on the sources of magnesium that are "advertised and warranted" on the Supplement label. (Dckt. #17 ¶36).

### 2. Plaintiffs Adequately Allege Materiality and Detrimental Reliance.

A misstatement is material if the correctness of the alleged fact would affect a recipient's decision. *Mar-Cone Appliance Parts Co. v. Mangan*, 879 F.Supp.2d 344, 382 (W.D.N.Y. 2012); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1228 (10th Cir. 2022).

Defendant contends that plaintiffs fail to allege a material misstatement or detrimental reliance because plaintiffs "would purchase the products again with the disclosures they claim NOW failed to make." (Dckt. #20 at 11). Plaintiffs do not definitively allege this; instead, they allege that they "would consider" such a purchase. (Dckt. #17 ¶40). In fact, in the sentence immediately prior, plaintiffs allege that had they "known the true nature and composition of the magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the magnesium from magnesium citrate, magnesium glycinate and magnesium malate actually delivered with the Supplements." (*Id.*). The Court "resolve[s] all ambiguities in favor of the plaintiff." *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995). As such, plaintiffs have adequately alleged materiality at the pleading stage.

Defendant cites *Verdi Energy Group, Inc. v. Nelson* for the proposition that a misstatement is material if it is the "but-for" reason for a decision, (Dckt. ##20 at 11; 31 at 7),

9

but, in doing so, defendant misreads the reasoning in *Verdi*, *see* 326 P.3d 104, 113 (Utah Ct.App. 2014). In that case, a buyer of real property alleged that defendants' misrepresentation of their authority to convey title was material to his partial performance of the parties' contract. *Id.* at 107, 113. The court concluded that defendants' misrepresentation was immaterial not because it "was not the but-for reason the purchase failed," (Dckt. ##20 at 11; 31 at 7), but because another fact—the nonexistence of a valid contract—was the *only* reason the purchase failed. *Verdi*, 326 P.3d at 113. Here, on the other hand, plaintiffs plausibly allege that defendant's misstatement influenced plaintiffs' purchasing decisions, (*see* Dckt. #17 ¶36), and NOW points to no fact that forecloses such a possibility.

Defendant's arguments that plaintiffs fail to allege detrimental reliance also fall short. Defendant does not contest that "reliance may be presumed (or at least inferred)" where a defendant's omission is material. (Dckt. #31 at 7–8). And NOW's argument that *Rowe v. Bankers Life & Casualty Company* prevents the Court from inferring reliance on a class-wide basis is unavailing because, unlike in *Rowe*, defendant posits no other logical explanation for plaintiffs' participation in the transaction at issue. No. 09-cv-491, 2012 WL 1068754, at *11 (N.D.Ill. 2012). In sum, plaintiffs have plausibly alleged materiality and detrimental reliance under both New York and Utah law.

### 3. Plaintiffs Adequately Allege an Intent to Deceive.

"Intent to defraud can be generally shown by evidence of guilty knowledge or willful ignorance," which includes evidence of a defendant's "conscious misbehavior." *Sapio v. Selux Corp.*, 726 F.Supp.3d 65, 92 (N.D.N.Y. 2024); *see Anderson*, 266 P.3d at 825 ("[F]raudulent intent may be inferred . . . when a plaintiff demonstrates that a defendant had actual knowledge of a material fact and that the defendant failed to disclose that fact.").

10

Defendant contends that plaintiffs include only conclusory allegations that NOW "knew or . . . should have known" its magnesium supplements were incorrectly labeled. (Dckt. #20 at 6–7). But plaintiffs' Complaint contains far more than conclusory assertions about NOW's knowledge. In particular, plaintiffs allege that NOW was aware of the Supplement's contents because: (1) NOW maintains industry-leading testing facilities and practices to evaluate the Supplement from raw material to final product, (Dckt. #17 ¶¶27–31); and (2) NOW changed its labels to disclose the use of magnesium oxide after plaintiffs brought suit, (*id.* ¶26). Plaintiffs thus assert when, where, and how defendant obtained the knowledge that its Supplement contained magnesium oxide. Plaintiffs even include allegations about *why* NOW might have chosen to deceive consumers: because magnesium oxide is a cheaper and less bioavailable source of elemental magnesium than other forms. (*Id.* ¶24). These allegations go far beyond the conclusory recitations evident in the cases defendant cites. *See Troutt v. Mondelez Global LLC*, 637 F.Supp.3d 606, 616 (S.D.Ill. 2022); *Greer v. Advanced Equities, Inc.*, 683 F.Supp.2d 761, 775–76 (N.D.Ill. 2010). Accordingly, defendant's motion to dismiss plaintiffs' fraudulent concealment claims is denied.

### B. Unjust Enrichment

Defendant argues that plaintiffs cannot bring an unjust enrichment claim because plaintiffs' unjust enrichment claim is premised on the same underlying conduct as plaintiffs' other claims, which provide an adequate remedy at law. (*See* Dckt. ##20 at 12–13; 31 at 11). Plaintiffs argue that they may plead their unjust enrichment claims in the alternative to their other claims, even if based on the same underlying conduct. (*See* Dckt. #28 at 15). The Court agrees.

"Under federal pleading standards," which govern here, *see Wertymer*, 142 F.4th at 495 n.1, "a plaintiff may plead claims in the alternative, even if the claims are contradictory," *Rudy v.*

*Family Dollar Stores, Inc.*, 583 F.Supp.3d 1149, 1166 (N.D.Ill. 2022); *see* Fed. R. Civ. P. 8(d)(3). The Court will only dismiss a claim where plaintiffs do not plead "any set of facts" in support of their claim that would entitle them to relief. *Twombly*, 550 U.S. at 563. And the fact that plaintiffs' other claims might provide an adequate remedy does not foreclose the success of their unjust enrichment claim under either New York or Utah law. *See Johnson v. Blendtec, Inc.*, 500 F.Supp.3d 1271, 1292–93 (D.Utah 2020) ("[T]he absence of an adequate remedy at law is not an element of the prima facie case for unjust enrichment under the law of Utah.") (cleaned up); *In re General Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372, 433 (S.D.N.Y. 2017) (Unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim.") (cleaned up); *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (Two claims are only duplicative if they "arise from the same facts and do not allege distinct damages.") (cleaned up). Accordingly, defendant's motion to dismiss plaintiffs' unjust enrichment claims is denied.

### C. New York GBL Claim

Defendant next moves to dismiss plaintiffs' GBL claims, arguing that plaintiffs fail to establish that NOW's conduct was materially misleading. (Dckt. #20 at 9). This argument, too, falls short. To survive defendant's motion to dismiss, plaintiffs "must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (cleaned up); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Plaintiffs must do more than plausibly allege that a label "might conceivably be misunderstood by some few consumers;" rather, the "standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bustamante v.*

*Kind, LLC*, 100 F.4th 419, 426 (2d Cir. 2024). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. Courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Izquierdo v. Panera Bread Co.*, 450 F.Supp.3d 453, 461 (S.D.N.Y. 2020) (cleaned up). "[T]his inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F.Supp.3d 370, 381 (S.D.N.Y. 2021) (cleaned up).

Plaintiffs have plausibly alleged that defendant's conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances. Specifically, they allege that: (1) "[r]easonable consumers of Magnesium Supplements base their purchasing decisions on the . . . source from which such magnesium is derived," (Dckt. #17 ¶36); (2) "[t]ypical consumers are unaware of and not familiar with the amount of elemental magnesium" contained in different sources of magnesium, (*id.* ¶37); and (3) consumers "reasonably rely o[n] [the Supplement labels] to accurately determine the identity, amount and source of any dietary ingredients" the Supplements contain, (*id.* ¶36).

Moreover, publicly available information about the elemental magnesium content of different magnesium forms does not undermine plaintiffs' GBL claim. In fact, contrary to defendant's arguments, courts have recognized that it is "materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, *even where there is a visible ingredients list* [on the product] that states the correct composition." *Izquierdo*, 450 F.Supp.3d at 462 (emphasis added); *see also Mantikas*, 910 F.3d at 639; *LeGrand v. Abbott Lab'ys*, 655 F.Supp.3d 871, 891–95 (N.D.Cal. 2023). Besides, public articles stating that magnesium glycinate is "often 'buffered' with magnesium oxide" do not foreclose the possibility

13

that defendant's magnesium was *not* buffered—especially given NOW's front-label and back-label statements about its Supplements' contents and "Superior Bioavailability."  (Dckt. #17 ¶¶12, 15).  Accordingly, defendant's motion to dismiss plaintiffs' GBL claim is denied.

### D.  New York and Utah Express Warranty Claims

Defendant next contends that plaintiffs fail to state a claim for breach of express warranty on the ground that no express warranty exists because their label contained no "affirmation of fact or promise" that the Supplements contained magnesium derived solely from malate, glycinate, and citrate.  (Dckt. #20 at 13–14).  For the reasons below, the Court disagrees.

A seller of goods can create an express warranty via affirmations of fact or promise, description of the goods, or samples or models that are made part of the basis of the bargain.  NY UCC §2-313(1)(a)–(c); Utah Code Ann. §70A-2-313(1)(a)–(c).  Under New York law, "product labels and advertisements can create express warranties," *Mason v. Reed's Inc.*, 515 F.Supp.3d 135, 146 (S.D.N.Y. 2021) (collecting cases), but not "if they are of such a general nature that a reasonable consumer would not rely on [them] as a statement of fact regarding the product," *Schneider v. Colgate-Palmolive Co.*, 677 F.Supp.3d 91, 103 (N.D.N.Y. 2023).  Similarly, under Utah law, a statement qualifies as an affirmation of fact where it is "objective in nature, i.e., verifiable or capable of being proven true or false."  *Boud v. SDNCO, Inc.*, 54 P.3d 1131, 1135 (Utah 2002).  "If it is reasonable to conclude that a reasonable person would have ventured into the transaction on the basis of a particular statement, an express warranty was made."  *Rawson v. Conover*, 20 P.3d 876, 887 (Utah 2001).

Plaintiffs have sufficiently alleged a breach of express warranty claim under both New York and Utah law.  Plaintiffs assert that the Supplements' front and back labels, which listed only magnesium citrate, glycinate, and malate, created an express warranty that the Supplements

14

did *not* derive from another form of magnesium, including magnesium oxide.  (Dckt. #28 at 19).

Defendant's argument that the labels lack language affirmatively asserting that the Supplements

derived "from pure forms of magnesium *alone*" is unavailing.  (Dckt. #31 at 14) (emphasis

added).  "An express warranty does not require any particular words," *Groen v. Tri-O-Inc.*, 667

P.2d 598, 606 (Utah 1983), *see also Northland Nav. Co. v. Am. Merch. Marine Ins. Co. of New

York*, 214 A.D. 571, 577 (N.Y.App.Div. 1925) ("No particular form of words is requisite to

constitute an express warranty."), and, as discussed above, *see supra* Section III.D., courts have

recognized that it is "materially misleading to suggest a product contains a greater proportion of

a preferred ingredient than it actually does," *Izquierdo*, 450 F.Supp.3d at 462; *Mantikas*, 910 F.3d

at 639; *LeGrand*, 655 F.Supp.3d at 892.

Plaintiffs adequately allege that defendant's label suggests that the Supplements contain a

greater proportion of preferred sources of magnesium than they actually do.  Furthermore, as

discussed above, *see supra* Section III.C., plaintiffs plausibly allege that reasonable consumers

rely on NOW's supplement labels as statements of fact that inform their purchasing decisions.

Drawing all reasonable inferences in plaintiffs' favor, it is plausible that NOW's product labeling

created an express warranty.  Accordingly, the Court denies defendant's motion to dismiss

plaintiffs' breach of express warranty claim under New York and Utah law.

### E.  Utah Implied Warranty Claim

Utah's Uniform Commercial Code provides that, "[u]nless excluded or modified . . . a

warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is

a merchant with respect to goods of that kind."  Utah Code Ann. §70A-2-314(1).  To be

merchantable, goods must, at a minimum, satisfy certain statutory criteria, including that they

"are fit for the ordinary purposes for which such goods are used" and "conform to the promises

15

or affirmations of fact made on the container or label if any." Utah Code Ann. §70A-2-314(2)(c), (f). Defendant contends that plaintiffs fail to allege (1) privity between plaintiffs and NOW, (Dckt. ##20 at 16–17; 31 at 12–13), or (2) breach, i.e. that the Supplements were unfit for their intended and ordinary purpose of "provid[ing] users with supplemental magnesium," (Dckt. ##20 at 12; 31 at 8). For the reasons below, both arguments fall short.

First, Utah law does not require privity for a breach of implied warranty of merchantability claim, even where plaintiffs only allege economic loss. Utah law creates a third-party beneficiary exception, which defendant fails to address, to the privity requirement for claims of breach of implied warranty. In particular, "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." Utah Code §70A-2-318. "[P]rivity of contract is not necessary where a direct relationship exists," independent of the kind of loss alleged. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 245 (Utah 2009); *see also Rollolazo v. BMW of N. Am.*, No. CV 16-00966 BRO, 2017 WL 1536456, at *17 (C.D.Cal. Feb. 3, 2017). Indeed, "it would be unjust to recognize a rule that would permit manufacturers of goods to represent that goods possess qualities they do not possess, and then deny the customer to recover damages because there is no privity of contract." *Stembridge v. Nat'l Feeds Inc.*, No. 1:11CV49DAK, 2013 WL 5347455, at *6 (D.Utah Sept. 23, 2013).

Defendant's citations to the contrary are inapt. *Davencourt* concerns the implied warranty of workmanlike manner and habitability, which is defined in an entirely separate section of the Utah Code from the implied warranty of merchantability at issue here. *See Davencourt*, 221 P.3d at 253 (discussing Utah Code section 78B-2, which concerns real property,

16

rather than Section 70A-2, which concerns Utah's Uniform Commercial Code). And *Lexow* and *Voelker* concern the standards for breach of implied warranty of merchantability under New York and Illinois law, respectively. *See Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp.*, 122 A.D.2d 25, 26 (N.Y.App.Div. 1986); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). Plaintiffs have adequately alleged that, as consumers of NOW's Supplements, they can bring claims for breach of implied warranty as third-party beneficiaries of NOW's product.

Second, for the reasons described above, *see supra* Section III.D., plaintiffs have adequately alleged that the Supplements do not conform to a promise or affirmation of fact on defendant's labels. Accordingly, the Court denies defendant's motion to dismiss plaintiffs' Utah breach of implied warranty of merchantability claim.

### F. Utah Class Claims

Defendant argues that Stonehart cannot bring claims on behalf of a putative Utah class because the Utah Consumer Sales Practices Act provides the exclusive remedy for a class claim within its gambit. (Dckt. #20 at 20). Plaintiffs contend, following the Supreme Court's reasoning in *Shady Grove*, that Rule 23 should supplant the Utah Consumer Sales Practices Act's statutory bar on class actions, or at least that the issue should be considered at a later stage of litigation. (Dckt. #28 at 14).

The Court follows its sister courts in declining to decide, at the motion to dismiss stage, whether the Utah Consumer Sales Practices Act limits the relief sought by plaintiffs. *See, e.g.*, *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F.Supp.3d 1043, 1061–62 (C.D.Cal. 2020); *In re Insulin Pricing Litig.*, No. 3:17-cv-699 (BRM) (LHG), 2020 WL 831552, at *6 (D.N.J. Feb. 20, 2020) ("[The Court] deems these issues better suited for disposition later in the litigation.");

17

*Sergeants Benevolent Assoc. Health & Welfare Fund v. Actavis, plc*, No. 15 Civ. 6549 (CM), 2018 WL 7197233, at *52 (S.D.N.Y. Dec. 26, 2018) ("The Court agrees that this issue is more appropriately handled following discovery."); *In re General Motors LLC Ignition Switch Litig.*, 339 F.Supp.3d 262, 332 n.63 (S.D.N.Y. 2018). Defendant's arguments focus on "whether Plaintiffs can pursue *class* claims under certain state consumer laws, not on whether the claims themselves are well pled. Only the second question is at issue in a Rule 12(b)(6) motion to dismiss." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F.Supp.3d 881, 920 (N.D.Cal. 2018) (emphasis included). The Court thus denies defendant's motion to dismiss Stonehart's Utah class claims.

## G. Injunctive Relief

Finally, defendant argues that plaintiffs' claim for injunctive relief should be dismissed as moot because defendant has changed the Supplement's label to disclose the presence of magnesium oxide. (Dckt. ##20 at 20; 31 at 17). A claim for injunctive relief becomes moot "once the threat of the act sought to be enjoined dissipates." *Loertscher v. Anderson*, 893 F.3d 386, 392–93 (7th Cir. 2018). Contrary to defendant's framing, plaintiffs do not assert that NOW has ceased the wrongful behavior at issue—namely, "deceptive distribution and sales practices with respect to the Supplement." (Dckt. #17 ¶72). Instead, plaintiffs allege that NOW changed the Supplements' labels to include magnesium oxide, but that "there are no record facts to show the new label is accurate." (Dckt. #28 at 20). Because it is plausible that plaintiffs may be able to offer facts showing that defendant's new label is *not* accurate, the issue for which plaintiffs seek injunctive relief remains live. Accordingly, dismissal of plaintiffs' claim for injunctive relief is not appropriate and defendant's motion to dismiss plaintiffs' claim for injunctive relief is denied.

18

## CONCLUSION

For the reasons set forth above, the Court denies defendant's motion to dismiss as to plaintiffs' fraudulent concealment, unjust enrichment, GBL, breach of express warranty, and Utah breach of implied warranty claims. (Dckt. #19). Defendant is ordered to answer the remaining non-dismissed claims in plaintiffs' Complaint by March 30, 2026. The stay on discovery is lifted. By April 13, 2026, the parties shall file a joint status report setting forth a proposed schedule for the completion of fact and expert discovery and providing an update on the status of their settlement negotiations.

**DATE:**      **March 9, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**